IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA HOLLOWAY,                                    No. 3:13-cv-01787-AC

        Plaintiff,                                    ORDER

   v.

CLACKAMAS RIVER WATER,
et al.,

        Defendants.


James D. Huffman
PO Box 973
St. Helens, OR 97051

    Attorney for Plaintiff

Peter R. Mersereau
Barrett C. Mersereau
Blake H. Fry
Mersereau Shannon LLP
One SW Columbia Street, Suite 1600
Portland, OR 97258

    Attorneys for Defendant


1 - ORDER

HERNANDEZ, District Judge:

Magistrate Judge Acosta issued a Findings and Recommendation (F & R) [32] on September 9, 2014, in which he recommends that this Court: (1) grant the Unserved Defendants' motion to dismiss the First Amended Complaint (FAC) in its entirety; (2) dismiss with prejudice Plaintiff's 42 U.S.C. § 1983 First Amendment retaliation claim and claims for civil conspiracy; (3) decline to exercise jurisdiction over Plaintiff's claims for intentional infliction of emotional distress (IIED) and malicious prosecution of a civil suit; and (4) dismiss with prejudice Plaintiff's motion for leave to amend since her civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims are futile and this Court has no original jurisdiction over her remaining claims. Plaintiff timely filed objections to the F & R. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1); Dawson v. Marshall, 561 F.3d 930, 932 (9th Cir. 2009); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Plaintiff objects to all of Judge Acosta's F & R except his recommendation regarding the Unserved Defendants. This Court has carefully considered Plaintiff's objections and adopts all of the F & R's conclusions. However, as explained herein, while this Court adopts Judge Acosta's conclusion that the First Amendment retaliation claim should be dismissed, this Court does not adopt his reasoning. This Court also clarifies that while it agrees with Judge Acosta that the civil RICO claims as currently pled in the Proposed Second Amended Complaint (PSAC) fail to state a claim, they are not dismissed—as Judge Acosta stated at page 19 of the F & R—

because they are not yet part of the case. Rather, Plaintiff's motion for leave to amend to add those claims is denied as Judge Acosta properly stated in the F & R's conclusion at page 20.

## BACKGROUND

The facts of this case are set out succinctly in the F & R. See F & R, 2–3. Only a brief introduction is provided here. Plaintiff, Patricia Holloway, is a former publicly elected commissioner on the Board of Commissioners of Clackamas River Water (CRW), a municipal corporation which oversees and regulates water distribution for the Clackamas Water District. This case is the most recent episode in a long series of disputes between Plaintiff and Defendants (CRW along with past and present commissioners, employees, and service providers). In her FAC, which is the operative pleading, Plaintiff alleges claims of First Amendment retaliation, malicious prosecution of a civil suit, IIED, and civil conspiracy. FAC, 45–49. Defendants moved to dismiss Plaintiff's claims. Plaintiff responded to that motion, but also filed a separate motion for leave to amend. Plaintiff attached a 111-page PSAC to her motion to amend including claims for malicious prosecution of a civil suit, IIED, civil conspiracy, and civil claims under RICO in addition to the claims already set forth in the FAC. PSAC, 101–110.

## DISCUSSION

This opinion will first address Plaintiff's First Amendment retaliation claim and civil RICO claims as they are the only claims over which this Court has original jurisdiction. This Court finds Plaintiff failed to adequately allege either a First Amendment retaliation claim or a civil RICO claim in her FAC or PSAC. As there are no remaining claims over which this Court has original jurisdiction, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims to the degree that Plaintiff is able to state a cognizable claim. 28

3 - ORDER

U.S.C. § 1367(c)(3). This Court will first address Defendants' motion to dismiss before addressing Plaintiff's motion for leave to amend.

## I. Motion to Dismiss First Amended Complaint

### A. First Amendment Retaliation Claim

#### 1. Judge Acosta's Analysis

Judge Acosta recommends this Court dismiss Plaintiff's First Amendment retaliation claim. F & R, 7. However, his recommendation is based on the assumption that Plaintiff was a public employee. Id. at 8. To state a claim for First Amendment retaliation under this standard, a court looks to:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 748 (9th Cir. 2010) (citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)). In addition to the allegations in the FAC, Judge Acosta noted that Plaintiff's attorney "unequivocally stated at oral argument that the speech relevant to this case all occurred in her official capacity." F & R, 8–9. Judge Acosta ruled that this prevented Plaintiff from pleading that she spoke in her capacity as a private citizen, an essential element of her First Amendment retaliation claim. Id. at 9–10. As Judge Acosta found that Plaintiff failed to allege that her statements were made in her capacity as a private citizen, he recommended this Court dismiss Plaintiff's First Amendment retaliation claim in the FAC. Id. at 8. Next, as Judge Acosta found that Plaintiff was foreclosed from pleading an essential element,

4 - ORDER

he denied Plaintiff's motion for leave to amend her First Amendment retaliation claim in the PSAC as futile. Id. at 9–10.

### 2. The Applicability of Garcetti v. Ceballos

In Anthoine, the Ninth Circuit considered the application of Garcetti v. Ceballos in which "the Supreme Court held that public employees do not have First Amendment protection for statements made pursuant to their official duties." Anthoine, 605 F.3d at 747–48. Specifically, the Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

However, the issue in Garcetti was whether "the First Amendment protects a government *employee* from discipline based on speech made pursuant to the employee's official duties." Id. at 413 (emphasis added). Plaintiff in this case is a publicly elected official, not a public employee. As such, Garcetti's analysis, and the analysis in Anthoine, does not apply. Additionally, the reasoning set forth in Garcetti for allowing public employers to restrict the freedom of speech of their employees does not carry the same persuasive weight in the context of an elected official.

Few cases have addressed Garcetti's applicability to publicly elected officials, but this issue was addressed in Zimmerlink v. Zapotosky, No. 10–237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. Apr. 11, 2011), adopted, 2011 U.S. Dist. LEXIS 53189 (W.D. Pa. May 18, 2011).[1] The plaintiff in Zimmerlink was an elected member of a county board of commissioners and an

---

[1] This case has a long and complicated procedural history. Plaintiff relies on a Magistrate Judge's ruling on a motion to dismiss. The Magistrate's Findings and Recommendation was adopted, but the Magistrate then, in a later ruling, granted summary judgment against the plaintiff on different grounds. Zimmerlink v. Fayette Cnty., No. 10–237, 2012 U.S. Dist. LEXIS 169349 (W.D. Pa. Nov. 29, 2012), aff'd, 539 F. App'x 45 (3d Cir. 2013). Still, the reasoning and analysis of the magistrate judge in Zimmerlink v. Zapotosky, 2011 U.S. Dist. LEXIS 53186 is sound.

5 - ORDER

"outspoken critic" of various county practices and policies. Id. at *1–2. The court began its analysis by noting that "[l]ong before Garcetti, the Supreme Court established that, at least with respect to political speech, elected legislators have First Amendment rights commensurate in scope with the First Amendment rights enjoyed by citizens in general." Id. at *5 (citing Bond v. Floyd, 385 U.S. 116 (1966)). In contrast, the court noted that "a public employee's interest in commenting on matters of public concern must be balanced against the government's interest as an employer." Id. at *7 (citing Garcetti, 547 U.S. at 418–20). However, the court held that Garcetti did not alter Bond, and, therefore, "[w]hile the government has interests as an employer justifying some regulation of employees' speech, the government has no interest justifying regulation of elected legislators' speech." Id. at *8–9. Ultimately, the court stated that:

> [A]ttempting to apply Garcetti to elected representatives demonstrates that Garcetti cannot apply to speech of elected officials. Under Garcetti, speech pursuant to a public employee's "official duties" is afforded no protection under the First Amendment. Bond recognized that elected legislators have an "obligation" to speak on political issues. Thus, if Garcetti applied to elected officials, speaking on political issues would appear to be part of an elected official's "official duties." But protection of such speech is the "manifest function" of the First Amendment. Garcetti, thus, cannot be applied to political speech of elected officials consistently with Bond."

Id. at *10–11 (internal citations omitted). Because the court found that Garcetti did not foreclose the plaintiff's case, it found that the plaintiff had pled sufficient facts to survive a motion to dismiss. Id. at *14.

This Court finds the reasoning in Zimmerlink to be persuasive. Therefore, this Court does not adopt Judge Acosta's recommendation to dismiss Plaintiff's First Amendment retaliation claim to the extent that it is based on the framework set forth by Anthoine and Garcetti.

//
//

6 - ORDER

### 3.  The Applicability of Blair v. Bethel Sch. Dist.

However, to the extent that Plaintiff's First Amendment retaliation claim is based on actions taken by CRW in its capacity as a municipal corporation, and CRW's commissioners in their capacities as publicly elected commissioners, this Court finds Blair v. Bethel Sch. Dist. to be controlling.  608 F.3d 540 (9th Cir. 2010).  Therefore, this Court agrees with Judge Acosta's recommended result, and Plaintiff's First Amendment retaliation claim is dismissed to the extent that it is based on actions taken by CRW and CRW's commissioners as publicly elected officials.

In Blair, a publicly elected former vice president of the public school board brought a First Amendment retaliation claim against the school district, the district's superintendent, the board's president, and others, alleging he was removed as the board's vice president in retaliation for exercising his First Amendment rights. The plaintiff was an outspoken critic of the school district's superintendent.  After the rest of the school board voted to extend the superintendent's contract and increase his pay, the plaintiff voiced his criticism of the superintendent to a newspaper.  Following this statement, the other school board members voted to remove the plaintiff from his position as vice president of the school board.

The Ninth Circuit in Blair did not discuss the applicability of Garcetti, but analyzed the plaintiff's claim according to the three elements of a First Amendment retaliation claim.[2]  Id. at 543.  The court found that the plaintiff's speech was clearly protected by the First Amendment, and that there was a causal link between the plaintiff's speech and the board's retaliatory action. Id.  The Ninth Circuit then noted that if the case was a typical First Amendment retaliation case, the court would be left to determine only whether the Board's action would have chilled a person

---

[2] To maintain a claim of First Amendment retaliation, a court looks to whether: "(1) [the plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."  Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006).

7 - ORDER

of ordinary firmness from speaking out. Id. "But [the plaintiff's] case is not a typical First Amendment retaliation case. What's different here is the 'adverse action' [the plaintiff] is challenging was taken by his peers in the political arena." Id.

The Ninth Circuit found that the plaintiff's case stood out in three ways. First, "the adverse action [the plaintiff] complain[ed] of was a rather minor indignity, and de minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim." Id. at 544. Second, the Ninth Circuit found that "more is fair in electoral politics than in other contexts." Id. The Ninth Circuit reasoned that it was expected that elected board members would have internal power struggles and that board members would "retaliate" against one another through oppositional voting. Id. Therefore, if the Ninth Circuit were to accept the plaintiff's view of what was cognizable under a First Amendment retaliation claim, the court would essentially be holding that "the First Amendment prohibits elected officials from voting against candidates whose speech or views they don't embrace." Id. at 544–45. However, "[e]xperience and political reality convince[d the Ninth Circuit that] this argument goes too far; the First Amendment does not succor casualties of the regular functioning of the political process." Id. at 545.

Third, and finally, the court noted that "it is significant that [the plaintiff] isn't the only party in this case whose interests implicate First Amendment concerns." Id. The court reasoned that the defendant board members enjoyed as much of a First Amendment right as the plaintiff, and that "[v]oting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech [is] established beyond peradventure of doubt . . . ." Id. (citing Stella v. Kelley, 63 F.3d 71, 75 (1st Cir. 1995)). Therefore, the court rejected the plaintiff's First

Amendment retaliation claim and found that "[d]isagreement is endemic to politics, and naturally plays out in how votes are cast. While the impetus to remove [the plaintiff] . . . undoubtedly stemmed from his contrarian advocacy against [the superintendent], the Board's action did not amount to retaliation in violation of the First Amendment." Id. at 546.

This Court also finds the Sixth Circuit's reasoning in Zilich v. Longo persuasive. 34 F.3d 359 (6th Cir. 1994). Zilich concerned a former city council member who sued the mayor and other city officials alleging First Amendment retaliation claims based on actions taken allegedly in retaliation for plaintiff's political opposition to the mayor. Id. at 361–62. In Zilich, one of the bases of the First Amendment retaliation claims was a resolution, passed by the defendants, stating that the plaintiff was never qualified to hold his position as he did not meet the necessary residency requirements when he assumed his position. Id. at 361. While ultimately the court dismissed this part of the claims on the grounds of qualified immunity, the Sixth Circuit reasoned that "[a] legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons." Id. at 363. Citing Bond, the court noted that "[t]he First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions." Id. Rather, the First Amendment "protects [the plaintiff's] right to oppose the mayor without retribution and it also protects defendants' right to oppose [the plaintiff] by acting on the residency issue which was left unresolved for over two years." Id.

However, the Sixth Circuit allowed the plaintiff's First Amendment retaliation claim to proceed to the extent that it was based on "alleged threats of physical violence outside the legislative arena by some defendants in response to plaintiff's opposition during his term in office." Id. This represented a possible First Amendment retaliation claim that could be proven

9 - ORDER

only at trial because "'[r]etaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment.'" Id. (quoting Fraternal Order of Police Hobart Lodge #121, Inc. v. Hobart, 864 F.2d 551, 553 (7th Cir.1988); and citing Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir.1983); Perry v. Sindermann, 408 U.S. 593 (1972)).

In her FAC, Plaintiff brings a First Amendment retaliation claim against all defendants.[3] FAC, 45. The "complaints" listed in the FAC are primarily actions taken by CRW after a majority vote of the commissioners.[4] The CRW is a municipal corporation that acts on the majority vote of its publicly elected board members. See Or. Rev. Stat. Ann. § 264.410(1) (West) ("[T]he power and authority given to districts is vested in and shall be exercised by a

---

[3] This Court notes that Plaintiff's allegations frequently address actions taken against Grafton L. Sterling who was, and is, a commissioner on CRW. FAC, 2. However, as Sterling is not a party to this case, these allegations are irrelevant to Plaintiff's claims and therefore this Court does not address them.

[4] See e.g.: FAC, 7 ("On October 10, 2007, during that CRW public meeting, Kemper, Lewis and Cardwell voted to remove Plaintiff as CRW Board President in retaliation for placing Kemper's removal of the original executive session recordings on the public meeting agenda."); id. at 9 ("On August 12, 2010, during a CRW board meeting Kehoe, Kemper, Lewis, Cardwell, Moore and Phillips refused to take action on the allegations, and refused to create internal controls to prevent fraudulent reimbursement requests."); id. at 12 ("[W]ith authorization by Kehoe, Kemper, Cardwell and Lewis, Moore filed a false criminal complaint against Plaintiff with the Clackamas County Sheriff's Department.); id. ("Kehoe, Kemper, Cardwell and Lewis, with the support of Moore and Phillips, voted to censure Plaintiff for distributing in the public meeting written information . . . ."); id. at 13 ("Kehoe, Kemper, Cardwell and Lewis voted to require commissioners to obtain CRW public documents through the regular public records process, and pay for those records. Commissioners were no longer entitled to receive records except those available to the general public."); id. at 14 ("Kehoe, Kemper, Cardwell and Lewis voted to authorize Kehoe to file an Oregon Government Ethics Commission (OGEC) complaint against Plaintiff. The four voted to remove Plaintiff from all public representation of CRW."); id. (Kehoe, Kemper, Cardwell and Lewis voted to remove Plaintiff from all CRW assigned roles, i.e., CRW representative to other water districts, participation in any CRW committee, etc.); id. at 15 ("[I]n a CRW executive session meeting called on approximately 24 hour notice, Kehoe, Kemper, Lewis, Cardwell, Moore and Phillips revealed that CRW had filed a criminal complaint against Plaintiff."); id. at 16 ("Kehoe, Kemper and Lewis again voted to have Kehoe file the OGEC complaint against Plaintiff and announced to the public that CRW had filed a criminal complaint against Plaintiff.); id. ("Kehoe, Kemper and Lewis voted to prohibit Plaintiff from having any contact with CRW staff."); id. at 18 ("Kehoe, Kemper and Cardwell voted to authorize legal counsel to file a CRW legal action against Plaintiff to demand return of what they termed ―exempt material to CRW."); id. (Kehoe, Kemper and Cardwell voted to authorize legal counsel to file a CRW legal action against Plaintiff to demand return of what they termed ―exempt material to CRW."); id. at 28–29 ("Sterling, Kehoe, Kemper and Cardwell voted to approve CRW Resolution No. 07-2012 [reclassifying commissioners as employees] only for tax withholding purposes. The passage of that resolution . . . deprived Plaintiff of the opportunity to bring a federal complaint for discrimination against an employee for whistleblowing."); id. at 29 ("Kehoe, Kemper and Cardwell [voted to] eliminated commissioner legal defense coverage for OGEC complaints, BOLI complaints, and injunctive relief complaints."); id. at 35 ("Kehoe, Kemper, Cardwell, Moore and Phillips refusing to provide Plaintiff with legal defense coverage, and forced Plaintiff to bear the financial cost of her defense."); id. at 42 ("Sowa, Humberston, Kalani, Moore and Phillips held a CRW executive session meeting, in which Humberson and Kalani authorized Phillips to negotiate a settlement with Voyles that would exclude Plaintiff and Sterling.").

10 - ORDER

board of five commissioners."). This being the case, "[Plaintiff] isn't the only party in this case whose interests implicate First Amendment concerns." Blair, 608 F.3d at 545. Rather, the actions of CRW and the votes of its commissioners which led to the actions underlying Plaintiff's FAC are "within the heartland of First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech [is] established beyond peradventure of doubt . . . ." Id. Therefore, as "the First Amendment does not succor casualties of the regular functioning of the political process," id., Plaintiff cannot maintain her First Amendment retaliation claim against CRW in its capacity as a municipal corporation, and against CRW's commissioners in their capacity as publicly elected commissioners.

### B. Conclusion

Ultimately, while this Court does not agree with Judge Acosta that Anthoine and Garcetti apply to this case, this Court agrees that Plaintiff fails to adequately state a First Amendment retaliation claim for relief in her FAC. To the extent Plaintiff bases her claim on the actions of CRW and its publicly elected commissioners taken in their official capacity, Plaintiff's complaint is dismissed with prejudice. However, Plaintiff is free to seek to amend her FAC to the degree she is able to state a claim for relief independent from those allegations. As this Court dismisses Plaintiff's First Amendment retaliation claim in Plaintiff's FAC, there are no other claims in the FAC over which this Court has independent jurisdiction. This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and they are dismissed.

## II.     Motion for Leave to Amend

Plaintiff's PSAC contains: (1) one claim for First Amendment retaliation under § 1983; (2) three claims for IIED; (3) three claims for civil conspiracy; (4) two claims for malicious prosecution of a civil action; and (5) three claims for RICO violations. PSAC, 101–110. Based

on his earlier reasoning, Judge Acosta recommends that Plaintiff's motion for leave to amend be denied in regards to Plaintiff's First Amendment retaliation claim. F & R, 13–14. As Plaintiff's First Amendment retaliation claim in the PSAC is substantively identical to the one in Plaintiff's FAC, this Court will not address it again. Because the only remaining federal cause of action in the PSAC over which this Court has original jurisdiction is Plaintiff's civil RICO claims, Judge Acosta first looked to whether allowing amendment of the FAC to include a civil RICO claim would be futile as the rest of Plaintiff's claims are state law claims and are before this Court only due to supplemental jurisdiction. Id.

### A. Civil RICO

#### 1. Overview of RICO Standing

In order to show RICO standing "a plaintiff must allege that it suffered an injury to its business or property, as a proximate result of the alleged racketeering activity." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1055 (9th Cir. 2008) (internal quotations and citations omitted). The injury to business or property must be concrete and protected under state law. See e.g., Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 364 (9th Cir. 2005) (finding harm to a specific property interest where the harm alleged by plaintiffs was fraudulent inducement, which is actionable under Hawaii law); Canyon Cnty. v. Syngenta Seeds, Inc., 519 F.3d 969, 975 (9th Cir. 2008) (holding that the Ninth Circuit requires a "plaintiff asserting injury to property [to] allege 'concrete financial loss'") (internal citation omitted)). In addition, "personal injuries are not compensable under RICO." Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992). Finally, proximate cause is established if "the alleged violation led directly to the plaintiff's injuries." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1149 (9th Cir. 2008).

12 - ORDER

### 2. Judge Acosta's Analysis of Plaintiff's RICO Standing

Judge Acosta found that Plaintiff failed to "adequately allege [RICO] standing as she did not allege that she suffered injury to a business or property interest proximately caused by Defendants' racketeering activity." F & R, 19. Based on this finding, Judge Acosta recommended that this Court find Plaintiff's civil RICO claim futile and dismiss the claim with prejudice. Id.

When addressing whether Plaintiff's PSAC adequately alleged RICO standing, Judge Acosta limited his analysis to "two types of loss to her business or property interest" which he identified as: (1) Plaintiff's business interest in being a commissioner, and (2) her expenditure of thousands of dollars in legal fees to defend against sham lawsuits and administrative complaints. Id. at 15–16. Judge Acosta first noted that Plaintiff provided no support for the assertion that a restriction in political duties constitutes a loss of business or property interest on which RICO standing may be based. Id. at 16. Second, Judge Acosta found that any claim based on Plaintiff's exclusion from executive meetings was futile as Plaintiff could not allege proximate cause. Id. This was because the types of racketeering alleged by Plaintiff—mail fraud, wire fraud, and threats in violation of the Hobbs Act—were not proximately related to her exclusion from participating in executive board decisions as a commissioner. Id. Plaintiff was excluded from executive meetings because the other commissioners voted to exclude her; not because of mail fraud, wire fraud, or threats in violation of the Hobbs Act. Id.

Next, Judge Acosta turned to Plaintiff's allegation that she suffered injury to her business or property interests under RICO by "expending thousands of dollars in legal fees to defend against sham lawsuits and administrative complaints." Id. Judge Acosta concluded that "legal fees expended to defend against sham lawsuits are not the type of injury to business or property

13 - ORDER

interests which confer standing to bring a civil RICO claim." Id. Furthermore, Judge Acosta found Plaintiff failed to allege proximate cause as the filing of sham lawsuits is not racketeering activity under RICO. Id. at 17. Regarding whether allegedly false allegations in a report ordered by the commission could constitute wire fraud, Judge Acosta found that Plaintiff's "allegation describes a causal relationship too attenuated to form the basis for a civil RICO claim," as "proximate cause requires that the alleged racketeering activity led directly to the Plaintiff's injury." Id. at 18. (internal quotation marks omitted).

### B. Analysis & Conclusion

This Court agrees with Judge Acosta's analysis of Plaintiff's RICO claim to the extent that he addressed Plaintiff's business interest in being a commissioner and her expenditure of thousands of dollars in legal fees to defend against sham lawsuits and administrative complaints. Apart from the interests identified by Judge Acosta, Plaintiff failed to adequately allege alternative cognizable business or property interests in her PSAC. However, this Court notes that Judge Acosta found that Plaintiff's civil RICO claim is futile, "and should be dismissed with prejudice." Id. at 19. As a procedural matter, this is incorrect. The motion containing Plaintiff's RICO claims was Plaintiff's motion for leave to amend, not Defendants' motion to dismiss. Therefore, this Court denies Plaintiff's motion to amend as Plaintiff failed to plead a cognizable claim for relief over which this Court would have original jurisdiction.

### III. Remaining Issues

### A. Motion to Dismiss for Lack of Service

This Court adopts the F & R's recommendation that the Unserved Defendants should be dismissed from this action. Id. at 7. Rule 12(b)(5) states that a court may dismiss a claim against a defendant for "insufficient process." Fed. R. Civ. P. 12(b)(5). Plaintiff did not respond to the

Unserved Defendants' motion to dismiss and has not filed an affidavit of service evidencing effective service of process. Furthermore, although Plaintiff "objects to all of the Magistrate's Findings and Recommendation," Plaintiff did not argue in her objections that Judge Acosta's analysis of lack of service was incorrect. Pl.'s Obj., 1. As Plaintiff does not object, I do not make a *de novo* determination of this portion of the Magistrate's recommendation.

### B. Plaintiff's Civil Conspiracy Claims

This Court adopts the F & R's recommendation to dismiss Plaintiff's civil conspiracy claims with prejudice as Judge Acosta is correct that civil conspiracy is not a separate cause of action.

### C. Plaintiff's IIED Claims

This Court adopts the F & R's recommendation to dismiss without prejudice Plaintiff's IIED claims on the merits. Oregon case law supports the conclusion that filing a lawsuit and an ethics complaint is not an "extraordinary transgression of the bounds of socially tolerable conduct." Babick v. Oregon Arena Corp., 333 Or. 401, 411 (2002); see Erlandson v. Pullen, 45 Or. App. 467, 473 (1980) (finding that an IIED claim could not be sustained based on the initiation of a lawsuit for fraud). As Plaintiff's IIED claims are based on the filing of an Oregon Government Ethics Commission complaint, a Bureau of Labor and Industries complaint, and two Clackamas County civil cases, Plaintiff's claims are dismissed as none of these actions transgress the bounds of socially tolerable conduct.

### D. Malicious Prosecution of a Civil Claim

This Court adopts the F & R's recommendation that this Court should decline to exercise jurisdiction over Plaintiff's malicious prosecution claims as there are no live federal claims over which this Court has jurisdiction at this point in the proceedings.

15 - ORDER

### E. Motion to Strike

This Court adopts the F & R's finding that Defendants' motion to strike is moot at this point in the proceedings and is therefore dismissed.

## IV. Federal Rules of Civil Procedure 8(a)

As noted above, Plaintiff's PSAC was 111-pages long, poorly organized, and repetitive. Although not specifically ruling on this issue, this Court notes that Rule 8(a) requires: (1) "a short and plain statement of the grounds for the court's jurisdiction;" (2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and (3) " a demand for the relief sought." Fed. R. Civ. P. 8(a). Additionally, "[e]ach allegation must be simple, concise, and direct." Id. at 8(d). Plaintiff is urged to follow Rule 8's requirements should she chose to move again for leave to amend.

## CONCLUSION

The Court adopts the conclusions of Magistrate Judge Acosta's F & R [32]. Therefore, Defendants' motion to dismiss [10] is granted; Plaintiff's motion for leave [14] to amend is denied; Defendants' motion to strike [10] is denied as moot; and the Unserved Defendants' motion to dismiss [18] is granted.

IT IS SO ORDERED.

DATED this 9 day of December, 2014.

*Marco Hernandez*
MARCO A. HERNANDEZ
United States District Judge