IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA HOLLOWAY,

                Plaintiff,

      v.

CLACKAMAS RIVER WATER, LEE E.
MOORE, JR., DEAN MARK PHILLIPS,
KATHERINE KEHOE, BARBARA
KEMPER, CINDI LEWIS-WOLFRAM,
MICHAEL CARDWELL, VANCE
VOYLES, LARRY SOWA, KENNETH
HUMBERSTON, HUGH KALANI,
SPECIAL DISTRICTS ASSOCIATION OF
OREGON, FRANK STRATTON, JENS
JENSEN, DOUG ANDERSON, TAMSEN
LEACHMAN

                Defendants.

Civ. No. 3:13-cv-01787-AC

FINDINGS & RECOMMENDATIONS

ACOSTA, Magistrate Judge:

      Plaintiff Patricia Holloway ("Holloway") filed this lawsuit against sixteen defendants

(collectively "Defendants") including Clackamas River Water ("CRW"), a municipal organization

tasked with providing water for citizens in northwest Oregon.  Holloway, who is a former member

FINDINGS AND RECOMMENDATION - 1                 [RMD]

of the CRW board of directors, alleges that after she voiced opposition to the conduct of some of her fellow board members and a CRW attorney, the Defendants engaged in a pattern of unlawful intimidation and retribution which violated her First Amendment rights and the Racketeering Influenced Organizations Act ("RICO"). She also alleges claims for intentional infliction of emotional distress ("IIED") and malicious prosecution of a civil suit. Because Holloway fails to cure the deficiencies in her previous complaints, the court should deny Holloway's motion for leave to amend.[1]

### Factual Background

When determining whether a motion to amend should be denied as futile, the court must apply the same standard as under a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6). During such a motion, the court must accept as true all factual allegations in the proposed complaint. As such, the factual background contained in this opinion derives from the allegations contained in Plaintiff's First Amended Complaint ("FAC") and Proposed Amended Complaint ("PAC").

Plaintiff Patricia Holloway is a former member of the board of commissioners of CRW, a municipal corporation which provides water to the Clackamas Water District. During her time as a commissioner, CRW was riddled with dysfunction and in-fighting. In October 2007, one of the commissioners took possession of and altered the audio recording of a recently held board meeting. Holloway and another board member urged the board to investigate the incident and file a complaint with the Oregon Government Ethics Commission ("OGEC"). Holloway attempted to place the

---

[1]Although the parties requested oral argument on Plaintiff's Motion for Leave to Amend, this motion is suitable for disposition without oral argument, and the court declines to grant the parties' request pursuant to LR 7-1(d)

subject on the public meeting agenda, but other board members opposed Holloway's efforts and voted to remove her as CRW board president.

Holloway continued to criticize her fellow commissioners and advocate investigations of alleged wrongdoing.  In July 2010, Holloway distributed information suggesting that one of her fellow commissioners committed "fraud of CRW ratepayer assets."  (Am. Compl. at ¶ G.)  In January 2011, she distributed information at a public CRW board meeting suggesting another commissioner unlawfully awarded no-bid contracts to business associates.  Later that same month, she revealed to the public that CRW legal counsel was once convicted of soliciting prostitution. Plaintiff also contacted the Oregon Department of Revenue to report that CRW had violated several financial regulations governing municipal corporations.

Holloway's criticism was not well-received by the other board members, and they subsequently engaged in a campaign of retaliation.  Members of the board authorized a commissioner to file an OGEC complaint against Holloway, voted to exclude Holloway from CRW executive sessions, and prohibited Holloway from having any contact with CRW staff and others with whom CRW did business.  Holloway also alleges that the Defendants conspired to file malicious lawsuits against her and canceled the CRW insurance policy which would have provided for her legal defense. Specifically, Holloway alleges that her fellow commissioners "agreed to 'sign up' CRW employees . . . to file employment law complaints against [Holloway] to cause [her] economic hardship."  (Proposed Am. Compl. at ¶ 4.57.13.)  Defendants' formal legal actions include: (1) an OGEC ethics complaint; (2) a criminal complaint; (3) a BOLI complaint; and (4) two civil lawsuits brought in Clackamas County.

*Procedural Background*

In October 2013, Holloway filed a complaint in this court alleging one claim for First Amendment Retaliation under 18 U.S.C. § 1983, one claim of malicious prosecution of a civil action, and one claim for intentional infliction of emotional distress ("IIED").  One month later, Plaintiff filed her FAC, which added a second malicious prosecution claim, a second IIED claim, and a claim for "civil conspiracy." (First. Am. Compl. at 45-49.)  Defendants filed a motion to dismiss for failure to state a claim and a motion to dismiss on behalf of several defendants who claim they received no service of process.  Defendants also moved to strike portions of Holloway's FAC.  Soon thereafter, Holloway filed a motion for leave to file a second amended complaint and attached a proposed complaint which alleged: (1) one claim for First Amendment Retaliation; (2) three counts of IIED; (3) three claims for civil conspiracy; (4) three claims for malicious prosecution; and (5) two "civil RICO" claims under 18 U.S.C. § 1962.  Defendants opposed Holloway's Motion for Leave to Amend and argued that the amending Holloway's FAC would be futile.

In its Findings and Recommendation, this court recommended dismissing Holloway's complaint in its entirety for failure to state a claim and denying Holloway's motion for leave to amend. *Holloway v. Clackamas River Water*, Civ. No. 3:13-cv-01787-AC, 2014 WL 6998069, at *11 (D. Or. Sept. 9, 2014).  Specifically, the court concluded Holloway's First Amendment retaliation claim should be dismissed because Holloway's speech occurred in her official capacity, her "civil conspiracy" claim should be dismissed because no such cause of action exists, and her IIED claim should be dismissed because she could not demonstrate Defendants engaged in "outrageous conduct." *Id.* at *5-7.

The court also recommended denying Holloway's Motion to Amend because her amendments were futile. The court determined Holloway's civil RICO claims were futile because she did not adequately allege proximate cause between Defendants' actions and a loss to her "business or property" interest. *Id.* at \*9-10. Further, because the only federal claim in her opinion was futile, the court recommended declining to exercise jurisdiction over the remaining state-law claims. *Id.* at \*11.

In a December 9, 2014 Order, Judge Hernandez agreed with this court's conclusions, granted Defendants' motion to dismiss, and denied Holloway's motion to amend. *Holloway v. Clackamas River Water*, No. 3:13-cv-01787-AC, 2014 WL 6998084, at \*9 (D. Or. Dec. 9, 2014). Although he adopted this court's conclusion that Holloway's complaint should be dismissed, he disagreed with the reasoning that Holloway's First Amendment retaliation claim was barred because her speech was made in her official capacity. *Id.* at \*6. Instead, Judge Hernandez relied on *Blair v. Bethel School District*, 608 F.3d 540, 546 (9th Cir. 2010), to conclude that Holloway could not pursue her claims against CRW or the individually named defendants in their official capacity. *Id.* Further, Judge Hernandez adopted this court's conclusion that Holloway's civil RICO claims were futile as pleaded, but disagreed with this court's conclusion it be "dismissed with prejudice" because the court was ruling on a motion for leave to amend and not a motion to dismiss. *Id.* at \*7-8. After Holloway filed a motion for reconsideration, which Judge Hernandez construed as a motion for clarification, Judge Hernandez granted Holloway leave to amend her civil RICO claim. (Dkt. No. 45.) Judge Hernandez's Order was silent whether Holloway could replead her First Amendment retaliation claim. (*Id.*) Holloway has now filed a motion for leave to amend and attached her Proposed Second Amended Complaint ("PAC").

*Legal Standard*

Under Rule 15 "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. The court should "freely give leave when justice so requires." However, the court need not grant leave to amend where the amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Futility can, by itself, justify denial of a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Amendment is futile if the proposed amended complaint would fail in the face of a motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

*Discussion*

Holloway now moves to file her Second Amended Complaint. Her PAC alleges: (1) First Amendment Retaliation under § 1983; (2) malicious prosecution of a civil suit; (3) intentional infliction of emotional distress; and (4) two civil RICO claims. Defendants oppose Holloway's motion to amend and contend her motion is untimely and futile. Specifically, Defendants argue Holloway's motion is futile because: (1) the complaint adds no new particular factual allegations and is too vague to survive a motion to dismiss; (2) Holloway's First Amendment retaliation claim cannot survive scrutiny under the Ninth Circuit decision in *Blair v. Bethel*; and (3) Holloway fails to adequately allege standing to bring a civil RICO claim.

I. Timeliness of the Motion

Defendants argue that Holloway's motion for leave to amend is untimely or, at a minimum, should be denied to the extent she amended her non-RICO claims after the December 29, 2014

deadline to file her amended complaint.  After Judge Hernandez issued his December 9, 2014 Order, the court directed Holloway to file a new motion for leave to amend on or before December 29, 2014.  (Dkt. No. 38.)  Holloway met that deadline by filing her Motion for Leave to File Amended Complaint/Petition on that date.  (Dkt. No. 39.)  Just days later, Holloway filed what she styled as a "Motion for Reconsideration."  (Dkt. No. 42.)  But instead of requesting reconsideration, her motion requested that Judge Hernandez clarify whether his December 9, 2014 Order permitted her to reraise her claims for violation of RICO.  Judge Hernandez explained in a January 12, 2015 minute order that Holloway may reraise her RICO claim to the extent it is consistent with the court's previous orders.  (Dkt. No. 45.)  On January 15, 2015, Defendants answered Holloway's motion for leave to amend.

Consistent with Judge Hernandez's instructions in the January 12, 2015 Minute Order, Holloway filed a second Motion for leave to Amend on January 27, 2015, but did not seek the court's leave to file an untimely motion.  Defendants again responded and contend her new motion is untimely.  They do not take issue with Holloway raising anew her civil RICO claims, but contend Holloway made additional amendments to her non-RICO claims between her December 29, 2014 motion and her January 27, 2015 motion.

Defendants do not cite legal authority for the proposition that Holloway's amendments run afoul of the law.  Holloway complied with the court order and, given additional leave to amend her RICO claim, also timely filed her PAC.

## II.  First Amendment Retaliation Claim Under § 1983

In her PAC, Holloway pleads anew her claim for First Amendment retaliation under § 1983. Defendants contend Holloway's amendments to her First Amendment retaliation claim are futile.

In support, they put forth three arguments. First, they contend Judge Hernandez's Order forecloses Holloway from pursuing her First Amendment retaliation claims. Second, they contend that, to the extent Judge Hernandez's Order permitted some of her First Amendment retaliation claims to proceed, they remain futile under *Blair v. Bethel*. Third, they argue that, even if Holloway may pursue her claim against one or more defendants, she fails to adequately plead her claim. Holloway argues that her amendments demonstrate Defendants' conduct was unlawful and outside the scope of Defendants' legislative duties. Thus, according to Holloway, *Blair* does not render her amendments futile.

    *A. Judge Hernandez's Order*

Judge Hernandez concluded in his December 9, 2014 Order that Holloway's claims were partially barred by the Ninth Circuit's decision in *Blair v. Bethel School District*, 608 F.3d 540, 546 (9th Cir. 2010). Judge Hernandez observed that Defendants' alleged wrongdoings were "primarily actions taken by CRW after a majority vote of the commissioners." *Holloway*, 2014 WL 6998084, at *6. In a footnote, Judge Hernandez quoted the pertinent portions of Holloway's First Amended Complaint which alleged actions giving rise to the First Amendment retaliation claim were voted on by the CRW board, and thus protected under *Blair*. *Id.* at *6 n.4. As a result, Judge Hernandez held that Holloway "cannot maintain her First Amendment retaliation claim against CRW in its capacity as a municipal corporation, and against CRW's commissioners in their capacity as publicly elected commissioners." *Id.* at *6. Thus, to the extent Holloway attempts to allege a *Monell* claim against CRW or claims against CRW commissioners in their official capacities, the First Amendment retaliation claims are futile.

However, § 1983 claims may be brought against government employees either in their official capacity or individual capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (discussing a § 1983 claim against the Defendant "individually and as Commissioner"). Judge Hernandez's Order forecloses Holloway's § 1983 claims only against CRW and the Defendants in their official capacities; his order does not bar a suit against the Defendants in their individual capacities. Therefore, Holloway may amend her complaint to state claims against the Defendants on this ground.

### B. Futility Under Blair

Defendants next contend that *Blair* forecloses Holloway's claims against Defendants in their individual capacity. Holloway argues that her case is distinguishable from *Blair*, and thus not futile under the Ninth Circuit standard governing First Amendment retaliation claims. The court agrees with Holloway, and concludes that her claims against Defendants in their individual capacities are not futile on this basis.

In *Blair*, the plaintiff brought a First Amendment retaliation claim against the Bethel School District. 608 F.3d at 542. The plaintiff was consistently critical of the school district's superintendent, who was supported by the remainder of the school board. *Id.* Due to the plaintiff's vocal criticism of the superintendent, the other school board members voted to remove the plaintiff from his position as school board vice president. *Id.* at 543. The plaintiff claimed that his removal from the vice-presidency chilled his First Amendment rights and violated § 1983. *Id.* The Ninth Circuit disagreed and upheld the district court's dismissal of the plaintiff's lawsuit. *Id.* First, the court determined that the demotion from the vice-presidency was a "minor indignity" that would not chill the speech of an ordinary individual. *Id.* at 544. Second, the court determined that the school

FINDINGS AND RECOMMENDATION - 9                                    [RMD]

board was wholly within its rights as a political and legislative entity to remove the plaintiff from his position as vice-president. *Id*. at 545. The court reasoned that "we *expect* political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory." *Id*. at 544 (emphasis original). Moreover, the court could "conceive little difference between what the Board's internal vote against [the plaintiff] accomplished and what voters in a general public election might do if they too were disaffected by [the plaintiff's] advocacy." *Id*. at 545. The *Blair* court, however, recognized that a plausible First Amendment retaliation claim may be premised on official legislative action under some circumstances pursuant to the Supreme Court's decision in *Bond v. Floyd*, 385 U.S. 116 (1966). *Blair*, 608 F.3d at 545 n.4.

In *Bond*, the plaintiff was a recently elected member of the Georgia House of Representatives who staunchly opposed the Vietnam war. 385 U.S. at 118. When the plaintiff arrived at the state house to take his seat in the legislature, the Georgia House of Representatives refused to seat him, contending that his vocal opposition to the Vietnam war made him unable to honestly take the oath of office which required the oath-taker to uphold the constitution and laws of the United States. *Id*. at 123. The court allowed the plaintiff to pursue his First Amendment retaliation claim and observed that, although the defendants' actions were arguably "grounded on a constitutional standard," the constitution could not be used as a sword to infringe on the Plaintiff's constitutional rights to free speech under the First Amendment. *Id*. at 131.

Despite the guidance provided by *Bond* and *Blair*, no test currently exists by which the court can determine when an elected-official plaintiff may pursue a First Amendment retaliation claim on the basis of actions taken by legislative actors. After carefully considering the courts' reasoning in *Blair* and *Bond*, this court has derived from those cases a two-part test which the plaintiff must

satisfy to proceed with her retaliation claim.  First, the plaintiff must demonstrate that the defendants' actions were sufficiently serious or deleterious such that it would deter a reasonable person from further First Amendment activity. Second, if the plaintiff makes this threshold showing, the court will consider the following factors to determine whether the claim is eligible for First Amendment protections: (1) the extent of the likely chilling effect; (2) whether the defendants' retaliation was an "internal matter" of the legislative body; (3) whether the defendants' alleged retaliatory action was effectuated outside the "regular give and take of the political arena," or was merely part of the regular functioning of the political process; and (4) whether the defendants' actions deprived the plaintiff of the ability to perform the duties for which she was elected.

Applying this test, the court concludes that Holloway's allegations constitute a cognizable claim under *Bond* and are not foreclosed by *Blair*.  Holloway sufficiently meets her burden at step one because lawsuits, criminal complaints, and ethics complaints could potentially result in significant legal consequences and, even if they were ultimately unsuccessful, would deter an individual of reasonable firmness from engaging in further First Amendment activity.

Further, the four-factor test weighs in Holloway's favor.  First, the Defendants' actions would likely have a significant chilling effect on Holloway's speech.  Unlike the *Blair* plaintiff's removal from a "titular" position, Holloway faced liability for damages, an ethics censure, and even criminal punishment if Defendants had succeeded in their "sham" legal actions.  Second Defendants' retaliatory conduct did not remain an "internal matter" to the CRW board.  Unlike *Blair*, where the only "retaliation" at issue was the plaintiffs' removal from an internal leadership position, the CRW board authorized their attorney to go outside the CRW organizational structure and take legal action against Holloway.  Thus, this factor weighs in Holloway's favor.  Third, the Defendants' actions fell

FINDINGS AND RECOMMENDATION - 11                                      [RMD]

outside the "regular give and take of the political arena." The *Blair* court upheld dismissal of the plaintiff's First Amendment retaliation claim in part because the defendants actions took place squarely within the bounds of the political arena, and in effect, was no different than "what voters in a general public election might do if they too were disaffected by [the plaintiff's] advocacy." *Blair*, 608 F.3d at 545. Here, the CRW took actions outside the usual political arena and used the legal system to "retaliate" against Holloway for her advocacy. Moreover, the voters in Holloway's district could not have voted to authorize the retributive legal action at issue in this matter. Therefore, this factor weighs in Holloway's favor. Holloway's complaint does not make clear whether she was prevented from performing the necessary functions of her elected office. However, even if Defendants' actions had no effect on Holloway's job duties, three of the four factors weigh in her favor, and the court concludes Holloway's First Amendment retaliation claim is not foreclosed by *Blair v. Bethel*.

### C. Adequately Pleaded Under FRCP 8

Defendants also contend that, even if Holloway's § 1983 claim is not futile under *Blair*, Holloway does not plead her claims with adequate specificity to survive a motion to dismiss under Rule 12(b)(6). Holloway contends that leave to amend should be freely given, and that the cases Defendants cited in support of their motion to dismiss are distinguishable from the facts of this case.

To state a claim for First Amendment retaliation, a plaintiff must show: (1) he or she engaged in protected First Amendment activity; (2) governmental officials committed acts which would chill or silence a person of ordinary firmness from future First Amendment activity; (4) the plaintiff's protected speech was a substantial or motivating factor in the government's adverse action; (5) the state had no adequate justification for treating the plaintiff differently from other members of the

FINDINGS AND RECOMMENDATION - 12                                    [RMD]

general public; and (6) the state would not have taken the alleged retaliatory acts had the plaintiff

not exercised her First Amendment rights. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740,

748 (9th Cir. 2010). Pursuant to the Supreme Court decisions in *Twombly* and *Iqbal*, the plaintiff

must allege facts and not legal conclusions to survive a motion to dismiss for failure to state a claim.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

 The proposed complaint attached to Holloway's first Motion for Leave to Amend "was 111-

pages long, poorly organized, and repetitive." *Holloway*, 2014 WL 6998084, at *9. Judge

Hernandez "urged [Holloway] to follow Rule 8's requirements" should she move again to amend her

claims. *Id.* Holloway's PAC is significantly shorter than previous complaints. However, in drafting

her new, shorter PAC, Holloway failed to include allegations essential to stating a claim for First

Amendment retaliation. Specifically, Holloway states only in conclusory fashion that she engaged

in protected First Amendment activity. She alleges that "the actions that are complained of by the

Plaintiff were not political reprisals against a fellow politician. The actions that are complained of

consist primarily of actions taken against a private citizen for her private speech." (PAC at 4.)

Putting aside that this allegation is in direct contradiction to a statement made by Holloway's counsel

at oral argument for Defendants' motion to dismiss, Holloway's allegations regarding her "private

speech" are conclusory and do not state facts which would put Defendants on notice of the speech

and conduct at issue in this case. Because of this deficiency, Holloway's First Amendment

retaliation claim would not survive a motion to dismiss for failure to state a claim, and is futile.

## III. Civil RICO Claim

 Holloway alleges Defendants deprived her of her business or property rights through a pattern

of racketeering in violation of RICO. Although Holloway alleges an extensive list of racketeering

activities, they condense to three categories: (1) filing sham lawsuits and sham administrative complaints; (2) posting false and unfounded statements on the internet, constituting wire fraud; (3) committing mail fraud by sending fraudulent information through the mail in furtherance of Defendants' sham legal actions.  Holloway contends these racketeering activities caused the following injuries: (1) attorney fees; (2) damage to her reputation; (3) financial loss of future employment prospects; (4) loss of prospective clientele in her real estate career; and (5) lost income from diverting productive and income-producing activity to defending Defendants' "sham" lawsuits and administrative complaints.  Defendants contend Holloway's civil RICO claims fail because she cannot adequately allege standing.

### A.  Standing to Bring a RICO Claim

Defendants contend Holloway does not sufficiently plead standing to pursue a civil-RICO claim because she did not plead a compensable injury under RICO can not adequately allege proximate cause.  Holloway does not address Defendants' proximate cause argument, but argues in her brief that her alleged injuries are "business or property" injuries compensable under RICO.

To state a claim for civil relief under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  A plaintiff must also allege facts which show she has standing to pursue a civil claim under RICO. *Id.*  in order to show standing, a plaintiff must allege: (1) She suffered "harm to a specific business or property interest;" and (2) the injury was a proximate result of the alleged racketeering activity . . . ." *Newcal Indus., Inc. v. Ikon Office Solutions.*, 513 F.3d 1038, 1055 (9th Cir. 2008).  Under the first prong of the standing inquiry, the plaintiff's loss must be "concrete" and protected as a property interest under state law. *Diaz v. Gates*, 420 F.3d 897, 900-01

(9th Cir. 2005). "Personal injuries," are not compensable under RICO. *Oscar v. Univ. Stud. Cooperative Ass'n,* 965 F.2d 783, 785 (9th Cir. 1992) (abrogated on other grounds as recognized in *Newcal,* 513 F.2d at 1055). Second, the plaintiff must demonstrate the proximate cause exists between the Defendant's racketeering activity and the plaintiff's injury. *Newcal,* 513 F.2d at 1055.

     1. Compensable Injury

Defendants first argue Holloway's alleged injuries are not "specific business or property" interests which implicate RICO. Holloway alleges five injuries: (1) Attorney fees; (2) damage to her reputation; (3) financial loss of future employment prospects; (4) loss of prospective clientele in her real estate career; and (5) lost income from diverting productive and income-producing activity to defending Defendants' "sham" lawsuits and administrative complaints. The court concludes none of Holloway's claimed injuries are compensable under RICO as currently pleaded.

     a. Attorney Fees

Holloway alleges that she suffered damages by "incurring personal liability in defense costs in excess of $50,000. However, in his December 9, 2014 Order, Judge Hernandez agreed with this court's conclusion that "legal fees expended to defend against sham lawsuits are not the type of injury to business or property interests which confer standing to bring a civil RICO claim." *Holloway,* 2014 WL 6998084, at *7. Holloway presents no compelling reason to depart from that conclusion. Therefore, her civil RICO claim cannot proceed based on her expenditure of attorney fees.

     b. Injury to Reputation

Second, Holloway alleges she suffered injury to her reputation as a result of Defendants' alleged racketeering activities. In *Bowen v. Oistead*, 125 F.3d 800 (9th Cir. 1997), the plaintiff

FINDINGS AND RECOMMENDATION - 15                      [RMD]

alleged a civil-RICO claim and contended he suffered civil rights violations and injury to his reputation. *Id.* at 806. The district court dismissed the plaintiff's RICO claim, writing that "[c]ivil rights violations and injury to reputation do not fall within the statutory definition of 'racketeering activity.'" *Id. Bowen* makes clear that civil rights violations and injury to reputation are not compensable injuries under RICO's requirement of a concrete harm to the plaintiff's business or property interest. Therefore, under *Bowen,* Holloway's RICO claims are futile to the extent they rely on injury to her reputation.

### c. Loss of Business Opportunities

Third, Holloway alleges she suffered injury to her business opportunities past and future. She contends she was deprived of "the sum of $150,000 in lost income" while she defended against the "sham" lawsuits. She also alleges the Defendants' actions damaged her future employment prospects and lost prospective clientele in the future. Defendants argue none of these constitute a cognizable "business or property interest" under RICO.

In the past, courts in the Ninth Circuit have been hesitant to find injuries to hypothetical economic prospects compensable as "business or property" interests under RICO. *See Oscar*, 965 F.2d at 785-86 (finding injuries under RICO must be a "concrete financial loss and not mere 'injury to a valuable intangible property interest.'") (abrogated by *Diaz*, 420 F.3d at 900-01); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (upholding the district court's decision granting summary judgment for defendants where the plaintiff's alleged "injury to a valuable intangible property interest in their liability policies" did not constitute an injury to a "business or property interest") (abrogated in part by *Diaz*, 420 F.3d at 900-01).

FINDINGS AND RECOMMENDATION - 16                                                [RMD]

However, in *Diaz*, the Ninth Circuit concluded that prospective property rights were recoverable in civil-RICO cases. In *Diaz*, the plaintiff sued more than two-hundred police officers under RICO for fabricating evidence, assault with a deadly weapon, and witness tampering which allegedly led to a false criminal conviction of the plaintiff. 420 F.3d at 898. The plaintiff claimed "among other forms of injury, he lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that he was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." *Id.* (brackets omitted). The district court granted Defendant's motion to dismiss, but the Ninth Circuit reversed and held that the plaintiff alleged a plausible claim. *Id.* The court concluded that state law governs whether a plaintiff's injury constitutes harm to a business or property right. *Id.* at 900. Because "intentional interference with a contract and interference with prospective business relations . . . are established torts under California law," the plaintiff's alleged injury was compensable under RICO. *Id.*

As *Diaz* requires, the court looks to state law for guidance on what constitutes a business or property interest. Oregon recognizes the tort of tortious interference with a business relationship. *Bernard v. S.B., Inc.*, 270 Or. App. 710, 714 (2015). To prove a claim for tortious interference with a business relationship, a plaintiff must prove:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage) ; (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.

*Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1188 (D. Or. 2011) (quoting *Allen v. Hall*, 328 Or. 276, 281 (1999).

Holloway alleges five of the elements necessary to demonstrate a property interest in her lost productive time, but fails to allege that Defendants' actions interfered with an "existing business relationship." To show she was deprived of a business or property interest, Holloway was required to allege that an existing employment relationship. She does not do so. Instead, she alleges that she was damaged in "the sum of $150,000 in lost income in defending the fraudulent charges." (Compl. at 8.) It is unclear from Holloway's complaint whether she had an existing employment or business relationship that she was forced to terminate so she could defend herself. Thus, she does not adequately allege a loss to "business or property interest," recognized by Oregon law, which confers standing to bring a civil RICO claim. Based on the pleadings, the court cannot conclude that Holloway had a "concrete" "business or property interest" in the time and effort she spent defending against the "sham" lawsuits.

Holloway also fails to adequately allege standing based on injury to her future employment prospects. Oregon recognizes the tort of intentional interference with a prospective business relationship. *Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors, Inc.*, 46 Or. App. 199, 208 (1980). However, to prove a claim for intentional interference with a prospective business relationship, the plaintiff must show that the business relationship at issue was a "proposed business relationship" and not simply a hypothetical opportunity which could arise in the future. *Id.* Thus, Holloway's contention that she suffered financial loss of future employment prospects and loss of prospective clientele in her real estate career fails, as she does not allege that business prospects were proposed, as opposed to merely hypothetical. Therefore, Holloway's claim is not adequately pleaded

FINDINGS AND RECOMMENDATION - 18                                [RMD]

to show she has a "business or property" interest in her time spent personally defending against the "sham" lawsuits or in any future employment opportunity which may have been stymied by Defendants' actions.  Because Holloway fails to allege a cognizable injury to her business of property interests, her RICO claims are futile as currently pleaded.[2]

However, the court cannot conclude at this time that Holloway can allege no facts which could demonstrate a business or property interest in the time spent defending against the "sham" lawsuits.  Therefore, the court should deny her motion without prejudice, and permit her to move for leave to amend in the future if she can do so in good faith.

IV.  State-Law Claims

Defendants make no argument concerning Holloway's state-law claims for intentional infliction of emotional distress and malicious prosecution of a civil suit.  Therefore, the court will not analyze the futility of those claims as they are currently pleaded.  However, because the court concluded Holloway's federal-law claims are futile as pleaded, the court declines to permit Holloway to file the Proposed Second Amended Complaint.

V.  Unserved Defendants

Defendants contend Holloway failed to comply with the court order dismissing her claims against the "unserved defendants," which the court has already dismissed for lack of service.

---

[2]Although neither party briefed the issue, the court observes that, where a plaintiff seeks to allege a claim premised in whole or in part on fraud or mistake, the "party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  More specifically, where a plaintiff's complaint contains a RICO claim premised on a pattern of fraud, "that pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392-93 (9th Cir. 1988).  Any amendments to Holloway's Complaint should comply with the requirements of Rule 9(b) and the *Albright* case.

Holloway concedes the "unserved" defendants should not have been named as defendants in the caption, but argues the court should not permanently foreclose her from naming them as defendants in the future. The court recommends the unserved defendants be struck from the case caption, with leave to rename them and without prejudice to any defenses Defendants could assert against the renamed defendants.

## VI.  New Defendant David McNeel

Last, Defendants contend Holloway's claims should be dismissed to the extent they are alleged against "new" defendant David McNeel. However, they do not justify dismissal at this time. Holloway alleges in her PAC that David McNeel ("McNeel") was, or currently is a "commissioner[] of CRW on the governing body at" all times relevant to the allegations in the complaint. Although Holloway did not name McNeel as a defendant in her prior complaints, Holloway was not precluded from adding or removing defendants through the amendment process, and Defendants do not produce sufficient justification for precluding Holloway from adding McNeel as a defendant or for dismissing Holloway's claims against McNeel.[3]

---

[3]Holloway should take note that failure to cure the defects in a complaint after multiple opportunities to do so is grounds for denying further leave to amend. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 537-38, 542 (9th Cir. 1989). Holloway amended her original complaint as a matter of right in November 2013, but the court dismissed her complaint as inadequately pleaded. Thereafter, she twice moved for leave to amend. Neither proposed amended complaint cured the deficiencies present in her previous complaints. Failure to cure the deficiencies discussed in this Findings and Recommendation may result in dismissal of this case with prejudice.

FINDINGS AND RECOMMENDATION - 20                                    [RMD]

*Conclusion*

For the aforementioned reasons, Holloway's Motion for Leave to File Amended Complaint/Petition (Dkt. No. 49) should be DENIED, but without prejudice to amend her claims.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 16, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 2nd day of October, 2015.

                                        _____
                                        JOHN V. ACOSTA
                                        United States Magistrate Judge