IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


PATRICIA HOLLOWAY,                                      3:13-cv-01787-AC

           Plaintiff,                              **FINDINGS AND**
                                            **RECOMMENDATION**

       v.

CLACKAMAS RIVER WATER, LEE E.
MOORE, SR., DEAN MARK PHILLIPS,
PHILLIPS LAW OFFICE, KATHERIN KEHOE,
BARBARA KEMPER, CINDI LEWIS-WOLFRAM,
MICHAEL CARDWELL, VANCE VOYLES,
LARRY SOWA, KENNETH HUMBERSTON,
HUGH KALANI, DAVID McNEEL, NAOMI
ANGIER, SPECIAL DISTRICTS ASSOC. OF
OREGON, FRANK STRATTON, JENS JENSEN,
DOUG ANDERSON, TAMSEN LEACHMAN,
and FISCHER & PHILLIPS,

           Defendants.

_____

Page 1 –FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge.

Plaintiff Patricia Holloway ("Holloway") filed this lawsuit against sixteen defendants including Clackamas River Water ("CRW"), a municipal organization tasked with providing water for citizens in northwest Oregon. Holloway, who is a former member of the CRW board of directors, alleges that after she voiced opposition to the conduct of some of her fellow board members and to a CRW attorney, defendants engaged in a pattern of unlawful intimidation and retribution which violated her First Amendment rights and the Racketeering Influenced Organizations Act ("RICO"). She also alleges state law claims for intentional infliction of emotional distress ("IIED"), breach of contract, and malicious prosecution of a civil suit.

Before the court is Holloway's Fourth Motion to Amend her complaint, which now names twenty defendants (collectively "Defendants"). (ECF No. 64.) Defendants filed an opposition (ECF No. 69), which opposition included a motion to strike unsourced factual material and uncited caselaw in Holloway's memorandum in support of her motion. Holloway filed a reply (ECF No. 73) and oral argument was held on May 24, 2016. Because Holloway fails to cure the deficiencies in her previous complaints, the court should deny Holloway's motion for leave to amend and this case should be dismissed without leave to amend.

*Factual Background*

When determining whether a motion to amend should be denied as futile, the court must apply the same standard as under a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6). During such a motion, the court must accept as true all factual allegations in the proposed complaint. As such, the factual background contained in this opinion derives from the allegations contained in Holloway's Proposed Amended Complaint.

Holloway is a former member of the board of commissioners of CRW, a municipal corporation which provides water to the Clackamas Water District. During her time as a commissioner, CRW was riddled with dysfunction and in-fighting. Holloway repeatedly criticized her fellow commissioners and advocated investigations of alleged wrongdoing. In July 2007, Holloway distributed information suggesting that one of her fellow commissioners committed fraud. In 2008, Holloway sued defendant Kemper for use of public funds in his personal criminal defense. In May 2008, Holloway assisted Mitchell to file an OGEC complaint against CRW information manager Quincy Whitfield for operating a personal computer business during the CRW work-hours and using CRW purchasing accounts to acquire computers and associated equipment. Defendants Kemper, Lewis, Cardwell, Moore and Phillips criticized Holloway for filing the OGEC complaint.

In July 2010, Holloway produced a written report to Kehoe, Kemper, Lewis, Cardwell, Moore, and Phillips documenting apparent fraud of CRW ratepayer assets by Lewis. In September 2010, Holloway met with CRW's independent auditor Van Beek & Co., LLC, to express concerns about Lewis's alleged fraud, and that CRW members were refusing Holloway's requests for CRW documents. In January 2011, Holloway distributed a document at a CRW board meeting detailing nearly $500,000 in inappropriate expenditure by Moore. In April 2011, Holloway reported to the Oregon Department of Revenue ("ODR") that CRW's proposed 2011-2012 budget was not prepared in accordance with ORD's Local Budget Rules because it failed to disclose salary information. In June 2011, Holloway distributed a negative written evaluation of Moore's performance at a CRW executive session.

In September 2011, at a CRW regular board meeting, Holloway expressed concerns with Carol Bryck's performance. At a regular CRW meeting in October 2011, Holloway stated that

CRW had failed to meet its revenue bond covenants for income vs. revenue requirements for the prior fiscal year. Holloway also reported that she contacted counsel to express concern that CRW was failing to meet revenue bond covenants. Kehoe, Kemper, and Cardwell permanently banished Holloway from executive session meetings. Prior to the October meeting, Holloway emailed her negative evaluation of Moore's performance to other board members.

In January 2012, Holloway sent an email to the CRW board and employees stating that Phillips had been convicted of solicitation in a Portland, Oregon school zone. Holloway made this same allegation at the following regular CRW board meeting and moved to terminate Phillip's contract for legal services. Cardwell, Kehoe, Kemper, and Moore objected to Holloway's statement and accused her of creating a hostile work environment for Phillips. Moore subsequently terminated Holloway's email access to CRW staff with advice and consent from Kehoe, Kemper, and Cardwell.

In May 2012, Holloway announced at a CRW public meeting that Moore had provided false information during the 2008 CRW employment application and interview process. In July 2012, Holloway published an article in the Clackamas Review, a Portland metropolitan area newspaper, criticizing a proposed agreement between CRW and the Sunrise commission. In September 2012, Holloway notified Kehoe, Kemper, Sterling, Moore, and Phillips that Kehoe had statutorily vacated her office as a CRW commissioner in July 2012, when Kehoe moved outside the CRW special district boundary.

In November 2012, Holloway objected to Moore's request that CRW approve a payment to Moore's personal attorney. In December 2012, Holloway notified the board that Moore had falsified the insurance application filed with Philadelphia Insurance Company by failing to disclose employee terminations and pending litigation. On February 14, 2013, Sowa,

Humberston, and Kalani adopted a policy requiring a majority vote to pre-approve any CRW board member communications with CRW vendors, consultants, or other parties with an existing contractual relationship with CRW. Members of the CRW board also voted to exclude Holloway from CRW executive sessions. Defendants allegedly conspired to file malicious lawsuits against Holloway, canceled the CRW insurance policy which would have provided for her legal defense, and recruited CRW employees to file employment law complaints against Holloway. Defendants' formal legal actions include: (1) an OGEC filing; (2) a criminal complaint; (3) a BOLI complaint; and (4) two civil lawsuits brought in Clackamas County. All of these actions resolved in Holloway's favor, and Holloway was forced to pay for her own legal defense.

### Procedural Background

Holloway's initial complaint, filed October 2013, alleged one claim for First Amendment Retaliation under 18 U.S.C. §1983, one claim of malicious prosecution of a civil action, and one claim for intentional infliction of emotional distress ("IIED"). One month later, Holloway filed an amended complaint ("FAC"), adding a second malicious prosecution claim, a second IIED claim, and a claim for "civil conspiracy." After Defendants filed a motion to dismiss for failure to state a claim and for failure of service of process, and a motion to strike portions of the FAC, Holloway filed a motion for leave to file a second amended complaint and attached a proposed complaint alleging (1) one claim for First Amendment Retaliation; (2) three counts of IIED; (3) three claims for civil conspiracy; (4) three claims for malicious prosecution; and (5) two "civil RICO" claims under 18 U.S.C. §1962.

On December 9, 2014, this court denied Holloway's motion to amend and granted Defendants' motion to dismiss. *Holloway v. Clackamas River Water*, No. 3:13-cv-01787-AC,

2014 WL 6998084, at *9 (D. Or. Dec. 9, 2014). Following this decision, Holloway received leave to amend her civil RICO claims. Minute Order, Jan. 12, 2015 (ECF No. 45). The decision did not address whether Holloway could replead her First Amendment retaliation claim. *See Holloway*, No. 3:13-cv-01787-AC, 2014 WL 6998084, at *9. Subsequently, Holloway again filed for leave file an amended complaint (ECF No. 49) which the court denied without prejudice on November 25, 2015. (ECF No. 61.) The court declined to assert pendent jurisdiction over Holloway's state-law claims. *Id.*

Holloway now moves for leave to file her proposed amended complaint (the "PAC"). (ECF No. 64.) Defendants filed a motion in opposition (ECF No. 69), to which Plaintiff replied on March 7, 2016. (ECF No. 73.) The PAC alleges (1) First Amendment retaliation under § 1983; (2) wrongful initiation of civil proceedings; (3) breach of contract and of the covenant of good faith and fair dealing; (4) intentional infliction of emotional distress; and (5) two civil RICO claims.

The PAC contains some allegations responsive to Judge Hernandez's order. The PAC now alleges that Holloway was deprived of the rights and duties of her elected office. The PAC also identifies "specific speech acts that formed basis of retaliation." (PAC at 72.) Holloway alleges that her protected speech consisted of speaking with CRW auditors and the Department of Justice (PAC at 19, ¶ 28.2), and her verbal and written statements regarding other CRW board members and CRW business.

Defendants oppose Holloway's motion to amend, arguing that the proposed complaint fails to state a federal claim for relief and is therefore futile. Because of the lengthy procedural history of this lawsuit, Holloway's PAC is analyzed against this court's prior orders in addition

to the standard under Rule 15. For the reasons discussed below, Holloway's motion should be denied and her claims dismissed without leave to amend.

### Legal Standards

Federal Rule of Civil Procedure 15 provides "a party may amend its pleadings only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15. The court should "freely give leave when justice so requires." However, the court need not grant leave to amend where the amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 951 (9th Cir. 2006). Futility can, by itself, justify denial of a motion for leave to amend. *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995). Amendment is futile if the proposed amended complaint would fail in the face of a motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

### Discussion

I.     § 1983 Claims

To state a claim for First Amendment retaliation, a plaintiff must show: (1) she engaged in protected First Amendment activity; (2) governmental officials committed acts which would chill or silence a person of ordinary firmness from future First Amendment activity; (3) the plaintiff's protected speech was a substantial or motivating factor in the government's adverse action; (4) the state had no adequate justification for treating the plaintiff differently from other members of the general public; and (5) the state would not have taken the alleged retaliatory acts had the plaintiff not exercised her First Amendment rights. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 748 (9th Cir. 2010). Pursuant to the Supreme Court decisions in *Twombly* and *Iqbal*, the plaintiff must allege facts and not legal conclusions to survive a motion

to dismiss for failure to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Holloway contends that she engaged in protected First Amendment activity of disseminating CRW documents and speaking out against CRW activities. She alleges that Defendants retaliated against her in violation of § 1983 with the following conduct: (1) enacting policy changes; (2) filing litigation against her; (3) excluding her from CRW meetings; (4) banning her from contacting staff members, vendors, consultants, and other parties having an existing contractual relationship with CRW related to current CRW business or relationships; and (5) denying her liability insurance coverage. PAC at ¶¶ 35.4, 41.1, 42, 46.3, 61.8, 62.6, 66, 78.1, 89, 89.1, 89.2, 93, 97.4.2, 97.4.3.

As an initial matter, the statute of limitations on a § 1983 claim in Oregon is two years. *Silva v. Crain*, 169 F.3d 608, 610 (1999). Because Holloway's original complaint was filed in October, 2013, her allegations regarding First Amendment violations occurring before October, 2011 are time-barred. In his 2014 opinion, Judge Hernandez "urged [Holloway] to follow Rule 8's requirements" should she move again to amend her claims, *Holloway*, 2014 WL 6998084, at *9. Despite Judge Hernandez's order, Holloway's latest PAC is 95 pages long and includes allegations inessential to stating a claim for First Amendment retaliation, including descriptions of alleged first amendment activity occurring prior to October, 2011.

The most recent Opinion and Order instructed Holloway that to state a claim under § 1983, she would have to allege that Defendants' acts deprived her of the rights and prerogatives of her elected office. (ECF No. 61, at *17) ("I cannot conclude that Plaintiff states a claim under *Blair* [*v. Bethel School Dist.*] without alleging that the retaliatory conduct deprived her of her authority as a CRW Commissioner"). Despite the length of her PAC, however, Holloway states

only in conclusory fashion that she suffered actionable retaliation based on the exercise of her First Amendment rights.

*1. Policy Changes*

Holloway's complaint alleges that Defendants retaliated against her in violation of § 1983 by adopting certain policy changes that adversely affected her. Judge Hernandez's order made clear that the votes of the CRW board do not support a claim for § 1983 because such votes constitute "legislative acts" and are therefore immune from suit. Judge Hernandez "precluded [Holloway] from basing her claim on Commissioners' conduct made in the context of the political process, including votes by Commissioners which might be retaliatory but which did not deprive [Holloway] of her ability to perform as an elected Commissioner herself;" and "precluded [Holloway] from basing her claim on conduct by CRW which it executed as a result of the majority vote of its Commissioners." (ECF No. 61, at *10.)

Holloway argues under *Bond v. Floyd* that the commissioners' acts and the CRW itself are not immune from suit because the commissioners adopted policies on an ad hoc basis in secret meetings. 385 U.S. 116 (1966). Based on the facts pleaded in the PAC, however, the CRW's adoption of the offending policies appears to have been by majority vote in regular meetings. While the PAC alleges that the policies complained of "were adopted for one specific purpose (ad hoc), to single out the plaintiff and injure her in her person and property in retaliation for her statements that were protected speech under the First Amendment," this is a legal conclusion and need not be taken as true in the court's analysis. (PAC, p. 70.) Holloway's § 1983 claims against government employees in their capacity as legislators are thus barred by *Blair v. Bethel School Dist.*, which held that votes of public bodies cannot be the basis for liability under the First Amendment unless it deprives a public official of the authority of her

office, because Defendants' alleged wrongdoings were "primarily actions taken by CRW after a majority vote of the commissioners." 608 F.3d 540 (9th Cir. 2010); *Holloway*, 2014 WL 6998084, at \*6. The court finds that the PAC fails to state a claim under § 1983 based on allegations of policies adopted by CRW votes, which are part of the political process and therefore immunized under *Blair*.

    *2. Filing of Litigation*

    As discussed in the prior order, the filing of litigation against Holloway is immunized from liability under the *Noerr-Pennington* doctrine. (ECF No. 61.) The *Noerr-Pennington* doctrine "shields individuals from . . . liability for engaging in litigation." *Microsoft Corp. v. Motorola*, 795 F.3d 1024, 1047 (9th Cir. 2015). The doctrine "creates an exception for 'sham' litigation, defined as 'private action that is not genuinely aimed at procuring favorable government action' as opposed to 'a valid effort to influence government action.'" *Id.* at 1047, n.17.

    Holloway alleges in the PAC that Defendants' filing of litigation is not immunized under the *Noerr-Pennington* Doctrine because Defendants engaged in "sham" litigation. Stating a claim under the 'sham' exception to the *Noerr-Pennington* Doctrine requires more than a showing of a history of failed appeals. *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533-34 (9th Cir. 1991). Beyond pointing out that the outcomes of the litigation were favorable to Holloway, Holloway does not make the requisite showing that Defendants' actions were "not genuinely aimed at procuring favorable government action." *See Motorala*, 795 F.3d at 1047, n.7.

    Holloway also appears to allege that Defendants' litigation filed against her resulted in a temporary "gag order" that operated as a "prior restraint" on her speech in violation of § 1983.

Because any order restraining Holloway's speech was issued by a court and not Defendants, this allegation also fails to state a cognizable claim against Defendants.

### 3. *BOLI Complaint*

The PAC alleges that in an October 2011 Executive Session, Commissioners Kehoe, Kemper, Cardwell, Moore, and Phillips "agreed to . . . cause Plaintiff financial and emotional hardship by reducing or eliminating legal defense and legal liability coverage, and 'signing up' employees to file employment practices claims against Plaintiff that she would then have to defend at her own expense." (PAC, pp. 4, 37-39.)

Judge Hernandez stated that "if certain Commissioners caused Voyles to file his BOLI complaint against Plaintiff, it could be argued that such conduct would deter a reasonable person from further First Amendment activity. Additionally, such a complaint could result in liability by Plaintiff for damages. And, it is possible, although not clear from [Holloway's complaint], that such Commissioners' actions were not part of the give and take of hardball politics in the context of the political process but were independent and outside of that process." *Holloway*, 2014 WL 6998084, at *16.

The PAC alleges that Voyles filed an "unfounded" BOLI complaint against Holloway on November 15, 2011, "within a month" of the agreement between Kehoe, Kemper, Cardwell, Moore and Phillips to recruit Voyles and Bryck to file employment practices complaints against Holloway. (PAC at 39-40.) Based on the allegations in the record, the Commissioners' decision to encourage staff to file BOLI complaints appears politically motivated and thus does not fall outside of the regular "give and take of hardball politics in the context of the political process." Further, insofar as this allegation singles out Voyles, it refers to the filing of litigation which is immunized under *Noerr-Pennington*. The *Noerr-Pennington* protection of the right to petition

the government is "particularly appropriate" where the petitioner's goals are political rather than economic. *Mohla*, 944 F.2d 531 at 535 n.3.

### 4. *Exclusion from and Threatened Removal from Meetings*

In *Bond*, retaliatory actions by the Georgia House of Representatives were actionable under § 1983 because the actions affected the plaintiff's ability to perform the duties of his elected position. *Id.* As the Ninth Circuit reiterated in *Blair*, "the retaliatory acts of elected officials against their own" can violate the Constitution when those acts effectively deprive the elected official of the "authority [she] enjoy[s] by virtue of [her] popular election." 608 F.3d at 545, n.4.

Holloway argues that the CRW board excluded her from executive sessions and threatened to remove her from meetings, depriving her of the authority of her public office. Despite her conclusory allegations to the contrary, however, Holloway has failed to allege facts showing that she was stripped of her ability to perform the duties of her elected office. The role of the CRW commissioner is to deliberate and vote on policy affecting the CRW. In Oregon, "[n]o executive session may be held for the purpose of taking any final action or making any final decision." OR. REV. STAT. 192.660(6). Further, while the PAC alleges that CRW board members voted to exclude Holloway from executive sessions, Holloway has not alleged that she was actually removed from any public meeting or executive session.

Holloway has not stated a plausible claim for relief because she does not allege that she was actually excluded from any of her job functions. While she states that Defendants deprived her of the rights and prerogatives of her office, this is a legal conclusion; she does not state facts to support a plausible inference. The PAC does not allege that Holloway was excluded from a meeting, and therefore has not alleged a violation of § 1983.

Holloway argues that this case resembles *Kucinich v. Forbes*, a case from the Northern District of Ohio, in her argument that adverse actions such as threat of arrest constitute § 1983 violations of elected officials' first amendment rights. 432 F. Supp. 1101, (N.D. Ohio 1977). *Kucinich* is not binding on this court and in any event is distinguishable because the plaintiff in *Kucinich* did not allege a § 1983 claim for damages; rather, he sought a temporary restraining order from future exclusions from city council meetings. *Id.* at 1103-04. In sum, Holloway has not alleged sufficient facts to show Defendants' attempts to exclude and remove her from CRW board meetings constitute a deprivation of the authority of her elected office.

### 5. Restrictions on Contacting Staff Members, Vendors, and Contractors

Holloway also alleges that Defendants infringed upon her First Amendment rights when they adopted a policy requiring a majority vote to pre-approve any CRW board member communications with CRW vendors, consultants, or other parties with an existing contractual relationship with CRW. Adoption of this policy, however, does not constitute a deprivation of the authority of Holloway's office. CRW commissioners set policy for the organization, and are not required to communicate directly with staff or vendors in order to fulfill their job duties. Thus, Defendant's decision to separate Holloway from CRW staff members and other parties did not violate her First Amendment rights.

### 6. Denial of Legal Defense and Indemnification

Holloway also alleges that she was deprived by Defendants of the indemnification and legal defense rights and prerogatives of her office. However, the decision to reduce coverage and to increase the deductible was the product of a policy vote by the CRW board. The alleged retaliatory policies complained of were a product of a majority vote consistent with the regular political process and the adoption thereof is thus immunized. Moreover, it was the Special

District Insurance Services ("SDIS"), not Defendants, that refused to provide legal defense for the BOLI complaint against Holloway.    For these reasons, Holloway's First Amendment retaliation claim would not survive a motion to dismiss for failure to state a claim; it is therefore futile.

II.    Civil RICO Claims

The PAC alleges that Defendants deprived Holloway of her business or property rights through a pattern of racketeering in violation of RICO.[1]    Rule 9(b) articulates a heightened pleading requirement that applies to civil RICO claims based on a pattern of fraud.    Thus, Holloway must state allegations in support of those claims with more particularity than is otherwise required.

To state a claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985).    A plaintiff must also allege facts which show she has standing to pursue a civil claim under RICO. *Id.*    In order to show standing, a plaintiff must allege: (1) She suffered "harm to a specific business or property interest;" and (2) the injury was a proximate result of the alleged racketeering activity." *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1055 (9th Cir. 2008).    Under the first prong of the standing inquiry, the plaintiff's loss must be "concrete" and protected as a property interest under state law.  *Diaz v. Gates*, 420 F.3d 897, 900-01 (9th Cir. 2005).    "Personal injuries" are not compensable under RICO.  *Oscar v. Univ. Stud. Cooperative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (abrogated on other grounds as recognized in *Newcal*, 513 F.2d at 1055).    Second, the plaintiff must demonstrate proximate

---

[1] Holloway characterizes Defendants "CRW elected officials, CRW employees, legal counsel, insurance providers, and claims adjustors" as "compris[ing] an Enterprise that executed the adverse actions." ECF No. 65, p. 2. All named defendants are alleged to be participants in the "Enterprise," even if they did not participate in individual acts. *Id.* at 2.

cause exists between the defendant's racketeering activity and the plaintiff's injury. *Newcal*, 513 F.2d at 1055.

Holloway's prior attempts to state a RICO claim did not succeed for failure to show a compensable injury under RICO. Here, Holloway alleges she meets RICO's standing requirements due to injuries in the form of (1) attorney fees and lost income from diverting resources to defend against sham lawsuits; (2) damage to her reputation; (3) loss of future employment prospects and prospective real estate clients; and (4) loss of insurance policy.

### 1. Attorney Fees Defending against Sham Litigation and Lost income

Attorney fees incurred defending against sham litigation comprise compensable injury sufficient for RICO standing. Holloway argues that the suits and actions filed against her were "sham claims" and thus attorney fees accrued defending against litigation, as well as income lost from diverting her resources to defending against said litigation, are compensable under RICO.

This argument succeeds if Defendants' claims are not protected under the *Noerr-Pennington* Doctrine. The *Noerr-Pennington* Doctrine generally immunizes suits and actions filed from legal liability. In *Oregon Natural Resources Council v. Mohla*, the Ninth Circuit noted that a heightened pleading standard exists "[w]here a claim involves the right to petition governmental bodies." 944 F.2d 531 (9th Cir. 1991). This heightened standard requires, in addition to the Rule 12(b)(6) pleading standards, that "a complaint must include allegations of the specific activities which bring the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection." *Id.* (internal quotations removed).

Holloway contends the claims were "sham" because each was concluded in her favor. This however is not sufficient to show that the litigation is not immunized by the *Noerr-Pennington* Doctrine. As the Supreme Court stated in *California Transport v. Trucking*

*Unlimited*, 404 U.S. 508 (1972), a "pattern of baseless, repetitive claims may emerge which leads the fact finder to conclude that the administrative and judicial process has been abused." Such a pattern of claim would constitute sham litigation and be unprotected under *Noerr-Pennington*. *Id.* "A 'sham' lawsuit is one where the suit is both 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits' and 'an attempt to interfere directly . . . through the use of the governmental process – as opposed to the outcome of that process.'" *Professional Real Estate v. Columbia Pictures Ind.*, 508 U.S. 49, 60-61 (1993). The facts alleged in the PAC do not show that the actions filed against Holloway were "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.*

Therefore, Holloway's attorney fees do not constitute a compensable injury sufficient to confer RICO standing. Similarly, because Holloway has not alleged sufficient facts to show that the litigation filed against her constitutes "sham" litigation, income lost from diverting Holloway's resources to defending against these claims does not constitute a compensable injury sufficient to show RICO standing.

### 2. Damages to Reputation

The alleged damages to Holloway's reputation resulting in a recall from office are not compensable under RICO. As discussed in the court's most recent order, an alleged injury to reputation is not the type of concrete harm to a business or property interest that supports civil RICO standing. ECF No. 61, pp. 19, 23 (citing *Oscar v. Univ. Students Co-Op A'ssn.*, 965 F.2d 783, 785-86 (9th Cir. 1992)).

While the PAC alleges that Holloway suffered a loss of compensation from her role as a commissioner after the recall, Holloway's constituents and not Defendants made the decision to

recall her from office. Because Holloway's constituents are not named defendants, the acts of her constituents cannot support Holloway's civil RICO claim.

### 3. *Loss of Employment and Prospective Real Estate Clients*

As the court found in its 2015 order, Holloway's alleged "lost business opportunity" damages do not qualify as compensable injury under RICO. ECF No. 61, p. 23. Here, Holloway's allegations of injury in the PAC due to lost real estate clients are too tenuous to qualify as an injury to business under applicable law because she does not link her claim of lost income to specific factual claims of lost property.

### 4. *Loss of Insurance Policy*

Finally, Holloway's loss of the protection provided by the CRW insurance policy is not sufficient to confer RICO standing. The policy cancellation was the subject of a CRW Commission public vote. While Holloway cites *Berg v. First State Ins. Co.* for the proposition that insurance policies are property and loss of insurance protection can be the subject of "actual injury" in a RICO action, she misrepresents the holding in that case. The plaintiffs in *Berg* alleged RICO violations, claiming "injury to a valuable intangible property interest in their liability policies when the policies were cancelled." 915 F.2d 460, 464 (9th Cir. 1990). The court found that plaintiffs nevertheless failed to allege an injury to property as required under RICO. *Id.* at 464. Following *Berg*, Holloway's claim of the loss of insurance policy does not sufficiently state a compensable injury to confer RICO standing.

In sum, because Holloway has not articulated a compensable injury sufficient to confer standing to allege a RICO claim, the allegations of RICO violations in the PAC fail to state a claim for relief and should be dismissed.

III.    Wrongful Initiation of Civil Procedure, IIED, and Breach of Contract Claims

Because Holloway's claims alleging violations of federal law fail to state a claim for relief, the court should decline to exercise pendent jurisdiction over her state law claims of wrongful initiation of civil procedure, IIED, and breach of contract. The court should also dismiss these claims without leave to amend.

IV.    Leave to Amend

As Judge Hernandez noted in his November 2015 Opinion and Order, "[a] plaintiff is not given an unlimited number of times to amend. At some point, the repeated failure to set forth facts to establish a viable claim supports the denial of a motion for leave to amend without leave to refile." ECF No. 61, p. 26, (citing *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (district court did not abuse discretion in denying leave to amend when the plaintiffs had "ample opportunity to properly plead a case and have failed to do so" and the plaintiffs previously failed to follow specific instructions from the court on how to amend the complaint)). Judge Hernandez instructed Holloway to find a balance between her "previously excessive 111-page proposed complaint" and her third proposed amended complaint, which failed to contain sufficient allegations to state a claim. For the reasons discussed above, Holloway's 95-page PAC fails to strike this balance and should be dismissed in its entirety without further leave to amend.

*Recommendation*

For the reasons stated above, Holloway's motion to amend her complaint (ECF No. 64) should be denied and this case should be dismissed without leave for further amendment.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order. The Report and Recommendation will be referred to a district judge.

Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days from today's date. If objections are filed, any response is due fourteen (14) days from the date of the objections. See Rule 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 5th day of July, 2016.

_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge